FRANK BURNS, complainant-respondent,

*v.*

CHARLES THOMAS, defendant-appellant.

[Submitted June 8th, 1912.   Decided March 3d, 1913.]

Complainant agreed to buy and defendant to sell a lot in Jersey City, particularly described as "being part of Plot 19 B in Block 1827, situated on the northerly side of Duncan avenue easterly from West Side avenue, being twenty-five feet in width in front and rear and one hundred and twenty-five feet in depth on both sides, together with a four-story brick apartment dwelling situated thereon." A deed was subsequently delivered describing the westerly line of the lot as running "through the centre of a party wall standing partly on the premises hereby conveyed and partly on the premises next adjoining westerly thereto."—*Held*, that the deed should not be reformed so as to convey the whole wall.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Garrison.

The defendant agreed in writing to convey to complainant a lot in Jersey City, particularly described as

"being part of Plot 19 B in Block 1827, situated on the northerly side of Duncan avenue easterly from West Side avenue, being twenty-five feet in width in front and rear and one hundred and twenty-five feet in depth on both sides, together with the four-story brick apartment dwelling situated thereon."

The building was then in course of construction and nearly completed. At the request of Lippman, who conducted the nego-

tiations as Burns's agent, a clause was inserted binding the defendant, Thomas, to complete the building in compliance with the plans and specifications and to do certain work and furnish certain things not material to the purpose of this litigation. The plans showed a party wall twelve inches thick on the west side of the lot, and a building twenty-five feet in width from the easterly side to the centre of the party wall. It is denied that Lippman, to whom Burns says he left everything, saw the plans. He and Burns went through the building before making the contract, and the list of things to be provided inserted at Lippman's request indicates a very careful examination of what was lacking. A chimney on the westerly side of the building projected four inches. Thereafter a deed was drawn describing the property by metes and bounds, twenty-five feet front and rear, one hundred and twenty-one and fifty hundredths feet on the westerly side and one hundred and twenty-two and seventeen hundredths feet on the easterly side; the westerly line is described as running "through the centre of a party wall standing partly on the premises hereby conveyed and partly on the premises next adjoining westerly thereto." Burns executed a purchase-money mortgage conveying the property by the same description as in the deed. These papers were prepared under the supervision of counsel acting for both vendor and vendee. Ample opportunity was given Lippman and Burns to examine them; the extent to which they did so is disputed. At the time the title passed, there was a map made according to a recent survey in counsel's office accessible to Lippman; whether he examined it is disputed, but he had the opportunity to do so. This map showed the westerly boundary of the lot as the "centre of 12″ wall." A few months after the title passed, Thomas began building upon the adjoining lot and inserted his timbers in the wall. Burns filed this bill for an injunction, substantially claiming a reformation of the deed to make it accord with the written contract. There is no allegation or proof of fraud; the charge is that through the mistake of counsel, the deed does not correspond with the agreement. The vice-chancellor decreed a reformation of the deed by substituting for the four lines of the lot as described an elaborate description of twelve courses and

distances following the exterior lines of the building, and enjoined the defendant from breaking into the westerly wall or placing ends of beams therein.

*Mr. John Francis Gough,* for the respondent.

*Mr. Charles D. Thompson,* for the appellant.

The opinion of the court was delivered by

Swayze, J.

The complainant does not seek rescission but relies upon the contention that the deed is not in accordance with the written agreement. The elaborate description in the decree is itself unlike anything in the agreement, and the decree can only be sustained upon the theory that the agreement was, if properly construed, to convey a building with the exterior lines set forth in the decree, and not merely to convey a lot particularly described with the dwelling thereon. If the complainant's contention is correct, there is a latent ambiguity in the agreement; it describes, first, a lot twenty-five feet in front and rear, and secondly, a building twenty-five and four-tenths feet in front on a lot of that frontage, and a width of twenty-five and fifty hundredths feet in the rear. In view of that ambiguity, we could not, after litigation has arisen, say that the practical construction by the parties when the defendant made the deed and the complainant made the mortgage was erroneous. There was no mutual mistake since each construction was equally open; the defendant might well think he was agreeing to sell only the lot particularly described, and the complainant that he was agreeing to buy the building by its exterior lines regardless of the land on which it stood. Their minds upon that theory never met. The complainant might indeed be entitled to rescind for the mistake, but that he does not ask, and has not put himself in shape to ask, by the necessary offer to restore the property to the defendant. In view of the ambiguity and the construction by the parties, the complainant fails to establish his case for reformation by that clear and convincing proof and that unex-

ceptionable testimony both with regard to the agreement actually made by the parties and the mutuality of the mistake through which a different agreement was put in the deed, which we have said is necessary to justify the reformation of a deed executed, delivered, accepted and acted upon. *Green* v. *Stone, 54 N. J. Eq. (9 Dick.) 387, 399.* The case is even stronger against the complainant. The alleged ambiguity does not in fact exist. The agreement is to convey "all that lot, tract or parcel of land and premises hereinafter particularly described." The particular description is of a lot twenty-five feet in width front and rear. This particular description seems to negative the idea of a wider lot. Then follows the language, "together with the four-story brick apartment dwelling situated thereon." The building is not particularly described by exterior lines as in the decree; the use of the word "thereon" is a plain indication that the building to be conveyed is a building on a lot twenty-five feet in width, not a lot twenty-five feet and four-tenths feet in width. There might be an ambiguity if it could be said that a building having on one side only six inches of wall of its own with an easement of support by another six inches on the adjoining lot, was not, properly speaking, a building. That, however, is not the fact. The case is the ordinary case that occurs in our compactly built cities, of a building with party walls. A building is none the less a complete building because one of its side walls requires, or is strengthened by, a supporting wall of an adjoining building. The right of mutual easements in such cases is well recognized, and each building is regarded as complete in itself. The language used by Chief-Baron Pollock, in *Richards* v. *Rose, 9 Exch. 218,* by the New York court of appeals, in *Rogers* v. *Sinsheimer, 50 N. Y. 646,* and the supreme court of Massachusetts, in *Carlton* v. *Blake (Mass.), 25 N. E. Rep. 83,* sufficiently vindicates this definition of a building.

The complainant in this case took title by his deed to a complete house, although he acquired also an easement of support by the defendant's wall; but this easement of support does not differ in kind from the ordinary easement of support of a man's land in its natural state by his neighbor's land. That houses built in this manner are separate buildings sufficiently appears

from the practice in this state in cases arising under the Mechanics' Lien act. In *Johnson* v. *Algor, 65 N. J. Law (36 Vr.) 363,* the plaintiff claimed a lien on a continuous row of brick dwelling-houses, divided by party walls into sixteen dwelling-houses. It was not questioned that the plaintiff was obliged to apportion his claim among the sixteen houses; the supreme court held that separate suits should have been brought against those interested in each house; upon this point we subsequently took a different view, but did not intimate a doubt as to the duty to apportion. *Culver* v. *Lieberman, 69 N. J. Law (40 Vr.) 341.* With this recognition by the courts that a building bounded by party walls is a distinct building, we must conclude that the complainant by his deed took title to all that the agreement gave him a right to claim—the lot twenty-five feet wide and the building thereon, and that he cannot claim an additional four-tenths of a foot merely because his grantor has given him also as an incident an easement in a brick wall on the grantor's remaining land. The case differs from *Gough* v. *Williamson, 62 N. J. Eq. (17 Dick.) 526,* where the agreement was to convey the "choice business corner—property known as No. 368 Grove street," and the dimensions were given not as a particular description of what was to be conveyed, but as an *addendum* by way of explanation. This case would have resembled that if the agreement had been to convey the four-story brick apartment dwelling, instead of a lot particularly described by certain dimensions. The case differs also from *Naughton* v. *Elliott, 68 N. J. Eq. (2 Robb.) 259; affirmed, 70 N. J. Eq. (4 Robb.) 805.* In that case the original option mentioned no dimensions, and the second option did not limit the length of the line in question, but used the language "at least 104 feet;" the important question was from what point that distance should be measured.

The decree must be reversed, to the end that the bill be dismissed. The defendant is entitled to costs in both courts.

*For affirmance*—None.

*For reversal* — THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDEN-BURGH, CONGDON, WHITE, TREACY—12.